ADEN v. STATE.

5078                                                    376 S. W. 2d 277

Opinion delivered March 9, 1964.

E. L. Holloway, for appellant.

Bruce Bennett, Attorney General, By Russell J. Wools, Asst. Atty. Gen., for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a conviction for voluntary manslaughter. Appellant Joseph Franklin Aden lived on a farm supervised by the deceased, Willis Cole, and had worked for Cole. A day or two before Aden shot Cole, Aden had started picking cotton for a Mr. Collier. The evening of September 18, 1962, Cole with his nephew went to Aden's

house where Cole determined, with anger, that Aden was working for Collier and that Aden planned to move from Cole's farm the following weekend. Their conversation took place beside Cole's truck. Aden testified that as he started to run back into the house, Cole hit him on the back of the head with a blackjack or something and knocked him to one knee. Cole then drove off. Aden went into his house, picked up his shotgun and a shell and drove to his parents' home. Aden and his father testified that they examined his head and his mother insisted that he go to a doctor; that Aden and his father then drove to the nearest doctor, who was not at home; that Aden then decided to go home and pick up his wife and find another doctor; and that after passing Cole's truck on the highway, Aden went to a gas station where he was backing up to a pump to get gas and air for a low tire when Cole's truck pulled in. The testimony is in conflict as to whether Cole or Aden got out of his vehicle first with a gun, but there is little conflict in testimony that Cole shot first, either once or twice, before Aden shot. Aden's shot hit the truck's open door behind which Cole was standing, which in turn deflected the shot up into Cole's right arm pit and side. Cole died shortly thereafter still holding a cocked pistol.

On September 19th, an information was filed in Randolph Circuit Court against Aden, charging him with murder in the first degree. He was tried on December 6, 1962, and because the jury could not agree on a verdict, a mistrial was declared. Then the case was set for trial January 21, 1963. At the close of this trial, the jury found appellant guilty of the crime of voluntary manslaughter and fixed his punishment at four years in the penitentiary. From the order on this verdict, appellant has prosecuted this appeal. For reversal appellant urges that the trial court erred in excluding the testimony of John Hannaford, who would testify that on the day before the killing the deceased told him that he, Cole, was going to kill appellant if he did not move (from his premises).

At commencement of trial appellant requested that the rule be invoked and all witnesses excluded from the court room. On the second day of trial during a recess, appellant's counsel learned what John Hannaford could testify to and immediately had him subpoenaed, sworn and sent to the witness room. This witness had sat in the court room during most of the trial up to the time he was subpoenaed, and had also heard most or all of the first trial. When appellant called Mr. Hannaford to testify, the State objected on the ground that he had been present in the court room during most of the trial and his testimony should therefore be excluded. The trial court stated (in its Findings following a motion for new trial): "In view of the fact the witness had been in attendance during both trials and there was testimony in the record concerning threats or alleged threats by the deceased to do violence to the defendant, and the defendant testified that certain threats had been communicated to him, the court felt that in view of what had transpired, that the State's objection should be sustained and the offered testimony excluded. It was the thinking of the court that if the Rule and the exclusion of witnesses from the court room during the taking of the testimony meant anything, that the objection of the State should be sustained."

*Harris* v. *State,* 171 Ark. 658, 285 S. W. 367, deals directly with this situation. Among the number of authorities cited and quoted with approval therein is the following:

"In 14 Encyclopedia of Evidence, chapter 'Witnesses,' page 598, it is said: 'The better rule seems to be that a witness is not disqualified from testifying by reason only of his having disobeyed an order of exclusion, that his testimony ought not to be rejected and the party who called him deprived of his testimony where such party is himself without fault; but that such violation should only affect this witness' credibility, or subject him to punishment for contempt.' "

The applicable rule in the *Harris* case has been succinctly summarized as follows:

"Where counsel for accused did not know until a few minutes before offering testimony that witnesses would testify to certain facts, and for that reason they had not been called as witnesses and put under the rule, refusal to permit them to testify was an abuse of discretion, where they were offered before the close of testimony."

For the error indicated it is necessary to reverse this case and remand the cause for new trial.

Reversed and remanded.