NOAH SIMMONS *v.* STATE OF ·ARKANSAS

CR 73-94                    498· S.W. 2d 870

Opinion delivered September 17, 1973

*Harold L. Hall,* Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Philip M. Wilson,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Noah Simmons was convicted of grand larceny and sentenced to 21 years in the peniten-

tiary with 11 years suspended. On appeal to this court, he contends that the evidence was only circumstantial and was insufficient to sustain his conviction. The appellant relies on a rule announced in a number of our decisions that:

> "Where circumstantial evidence alone is relied upon to establish the guilt of one charged with crime, such evidence must exclude every other reasonable hypothesis than that of the guilt of the accused." *Logi* v. *State*, 153 Ark. 317, 240 S.W. 400.

See also *Duckworth* v. *State*, 83 Ark. 192, 103 S.W. 601; *Ayers* v. *State*, 247 Ark. 174, 444 S.W. 2d 695; *Jones* v. *State*, 246 Ark. 1057, 441 S.W. 2d 458.

The appellant contends that the facts and circumstances shown must be absolutely inconsistent with any other rational theory and cites *Walker* v. *State*, 174 Ark. 1180, 298 S.W. 20. In *Reed* v. *State*, 97 Ark. 156, 133 S.W. 604, we said:

> "But mere circumstances of suspicion are not sufficient upon which to base the conviction for a crime, which must be established by substantial evidence to the exclusion of a reasonable doubt."

In *Parker* v. *State*, 252 Ark. 1242, 482 S.W. 2d 822, we said:

> "On appeal, in criminal cases, as in others, the evidence must be viewed in the light most favorable to the appellee, and the judgment affirmed if there is any substantial evidence to support the jury's verdict. *Murphy* v. *State*, 248 Ark. 794, 454 S.W. 2d 302; *Stanley* v. *State*, 248 Ark. 787, 454 S.W. 2d 72. A conviction may be had on circumstantial evidence alone if there was substantial evidence to go to the jury because the law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of the fact may be inferred. *Lancaster* v. *State*, 204 Ark. 176, 161 S.W. 2d 201. In light of the foregoing rules we state the evidence which we find sufficient to make a jury question."

This court, in criminal cases on appeal, views a jury verdict, or a decision of the trial judge sitting as a jury, in the light most favorable to the appellee. We only determine whether there was substantial evidence to support the verdict and, if there is, we must affirm. *McCray* v. *State,* 254 Ark. 601, 494 S.W. 2d 708; *Crow* v. *State,* 248 Ark. 1051, 455 S.W. 2d 89. We do not attempt to weigh the evidence, for that is the function of the jury, or the trial judge sitting as a jury, who is in a position to evaluate the testimony of witnesses as they testify from the witness stand.

Now turning to the facts in the case at bar, Simmons was convicted of taking money from a cash register at a Penney store. Lela Smith, a customer in the Penney store, testified that she was standing near the cash register involved and heard the bell on the cash register ring. She said she looked immediately toward the cash register; saw Simmons standing sidewise beside the register, and saw some money in his hand as he left the cash register. She said that one of the clerks called for Simmons to halt, but that he continued to leave the store and walked out the door. She described Simmons as wearing a yellow, or gold, colored shirt, having an "Afro" hair style, and walking with a limp. This witness also testified that Simmons later came to her house; admitted to her that he had committed the crime and requested her not to testify against him in court as his attorney had advised that her testimony would likely convict him. On cross-examination this witness testified that she did not actually see Simmons take anything out of the cash register and that she did not see what he did with the money he had in his hand, but she did see him leave the store.

Georgia Hixon testified that she was employed at the Penney store and was busily engaged at the back of the store when she heard the bell on a cash register ring. She said she immediately looked toward the cash register and saw Simmons standing by it. She said as Simmons left the cash register, she walked toward him and told him to stop but that he just walked out of the store. She said that Simmons had on a yellow, or gold, colored shirt and walked with a limp, and that she saw no one else in the store dressed in that manner or limp when they walked.

Charles Smith. testified that he was employed at the Penney store on the day in question; that Mrs. Hixon called over to him and advised him that somebody had tapped the cash register till, and that it was a young man in a yellow shirt. He said he immediately went outside and overtook Simmons. He said Simmons was the only person he saw who had on a yellow, or gold, shirt. He said he told Simmons what Mrs. Hixon had said and that Simmons told him another young man had gotten the money; that he, Simmons, saw the other man going out the door and that he had on a yellow shirt. He testified that Simmons told him the other individual who had taken the money from the cash register threw it behind the watch counter. On cross-examination Mr. Smith said that the only reason he stopped Simmons was that he was the only one on the street who had on a yellow shirt.

Mr. Carl Brooks, another Penney employee, testified that he followed Mr. Smith outside the store and met Smith and Simmons returning to the store. He said he overheard Simmons say that the person he saw run out of the store threw the money behind the jewelry counter. He said he found approximately $60 in wadded up bills behind the jewelry counter, and that the cash register was short the amount of money found.

Simmons testified in his own defense; he said that as he was walking out of the Penney store on the day in question, someone ran past him and threw some money on the floor behind the jewelry counter. He said he knew what was going on because he was familiar with crime himself. He said he just kept on walking and that when Mr. Smith overtook him and asked him to return to the store, he agreed to do so because he knew what Mr. Smith was talking about; that he knew he had nothing to hide, so he just told Mr. Smith where the money was. He said he told Smith "Yeah, I saw the dude. He threw the money over there." Simmons denied that he took any money from the cash register. He said he was over by the door when he heard a woman "holler" for someone to stop, but that he took no heed because she was not referring to him. He denied telling Mrs. Smith that he was guilty but said he told her he would be *found* guilty if she testified against him.

Dwight Sims, a witness called by the defense, testified that he was in the vicinity of the Penney store on the day in question and saw Simmons that day. He said he also saw another man come out of the Penney store wearing a gold colored shirt. On cross-examination he testified that he had never seen Simmons before the incident happened, and that the other man he saw come out of the store wearing a gold colored shirt, ran down the street away from the store.

Kenneth Profit also testified as a' witness for Simmons. He said he was standing in front of the Penney store waiting for a bus on the day in question. He said that a "dude" came out of the Penney store running fast; that he was wearing a yellow shirt and he saw him run down the street. He said he did not know Simmons.

It is difficult to imagine a stronger case of circumstantial evidence than is presented by the record in this case. Certainly there is substantial evidence to sustain the conviction, so the judgment of the trial court is affirmed.

Affirmed.

GEORGE ROSE SMITH, J., concurs.

GEORGE ROSE SMITH, Justice, concurring. As the majority opinion indicates, in past criminal cases we have approved instructions telling the jury that when the State relies upon circumstantial evidence only, its proof must exclude every reasonable hypothesis except that of the defendant's guilt. The Attorney General now suggests that we should change that rule, in harmony with the doctrine approved in *Holland* v. *United States,* 348 U.S. 121 (1954), and hold that the usual instruction upon reasonable doubt covers the ground and makes the special circumstantial evidence instruction unnecessary. The suggestion may very well have merit; compare our treatment of the unavoidable accident instruction in civil cases. *Houston* v. *Adams,* 239 Ark. 346, 389 S.W. 2d 872 (1965). We need not explore the question here, since the judgment is being affirmed, but I think it appropriate to mention in this concurring opinion the possibility that our rule may be re-examined in some proper case in the future.