Willie GRAVES *v.* STATE of Arkansas

CR 73-164                                         505 S.W. 2d 748

Opinion delivered March 4, 1974

*Richard L. Slagle*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Willie Graves, an indigent, was convicted of robbery and sentenced to nine years in the penitentiary. For reversal appellant contends the failure of the Municipal Court of Hot Springs to appoint counsel to represent him at a preliminary hearing held on the day following his arrest, together with the subsequent denial by the Circuit Court of Garland County of his pretrial motion to remand for a preliminary hearing after counsel had been appointed, deprived him of the right to counsel at a critical stage in the criminal process. He also alleges that the judgment was not supported by the evidence and that a ring introduced into evidence was obtained as a result of an illegal arrest and a warrantless search.

Robert Simpson, a Springfield, Missouri, resident, who was in Hot Springs on business, gave the following account of the incident:

On the night of September 6, 1972, Simpson, who had been visiting bars and having a drink of beer in each, was approached in a bar by the appellant who inquired if Simpson wanted a girl. Simpson said no, left the bar and returned to his car. Appellant appeared at the car window and tapped on it. Simpson lowered the window and appellant reached through, unlocked the door, opened it, and got in the automobile. Appellant told Simpson to drive to a certain address to find a girl and Simpson, believing this to be the easiest way to get appellant out of the car, complied. Upon reaching the address (317 Grove), both men got out of the car. At this point, appellant struck Simpson from behind, and began clawing at his clothes trying to get in his pockets. When the first police officers arrived, both men were down, and the struggle was still in progress, but Graves then arose, and by the time the officers got out of the car both Simpson and appellant were searching for Simpson's glasses which had been knocked off in the struggle. Simpson told the first officer to arrive what had happened, and in response to questions from the officers, realized that a diamond ring was missing from his little finger. The ring was recovered from appellant, but Simpson did not see the actual search of appellant's person.

Simpson also testified he did not remember blowing the horn at the residence located at 317 Grove, did not recall appellant going to the house and did not remember a woman coming out to the car. Simpson said he could not remember if he ever asked appellant to get out of the car, and could not explain why he did not drive off when appellant left the car at their destination. Simpson said he thought his pants were unzipped when the officers arrived, but denied any homosexual relationship with appellant.

Officer Hayes of the Hot Springs Police Department testified that at about 1:00 a.m. on September 7, he and Officer John Trammel were dispatched to 317 Grove. Hayes said that upon reaching the scene he observed another police car already there with the officers still seated in the vehicle. He stated no struggle was going on, and said appellant was attempting to enter the Simpson car and Simpson was

stammering and "staggerin' around" at the rear of the car. According to Hayes, he conferred briefly with Officer Cockman, who had arrived in the other police car, and then walked over to Simpson, who told him appellant had robbed him of a diamond ring which he described, in response to Hayes' questions, as a Shriner's ring worth $2,500. Hayes said he then arrested appellant, "frisked" him and placed him in his police car. After talking further with Simpson and taking a statement from Jewell Lofton, who lived at 317 Grove, and who had called the police, Hayes said he asked appellant if he had the ring, and appellant said he did not. Hayes stated he then ordered appellant out of the car and conducted another search which resulted in the ring being found in appellant's shoe.

Appellant took the stand and gave the following version of the incident:

As appellant walked out of a bar, Simpson, who was seated in a car parked at the curb, asked appellant if he could arrange a date for him. At Simpson's invitation, appellant got into the car, and directed Simpson to the Grove Street address, where Jewell Lofton lived. After Simpson blew the horn, appellant went to the door and talked to Miss Lofton, who refused his proposal. When appellant returned to the car, Simpson, who was urinating in the yard, made homosexual advances toward him. Appellant hit Simpson, and a struggle ensued. The fight stopped just before the first police car approached. Simpson asked appellant to help find his glasses, which had been lost in the struggle, and to say nothing to the officers. Appellant found the glasses and the ring, returned the glasses to Simpson, but, not knowing to whom the ring belonged, stuck it in his shoe. He then told the first officer who inquired that nothing was wrong. Officer Hayes then arrived, and Simpson told him appellant was trying to rob him. Hayes jumped from his car, grabbed appellant, searched him and placed him in the police car. Hayes talked to Simpson, and then returned to the car and told appellant to get out for another search, because Simpson said he had lost a ring. The second search produced the ring from his shoe.

We find error in the failure to provide counsel at the preliminary hearing. The United States Supreme Court has held that, when a preliminary hearing is conducted prior to a grand jury proceeding, the appointment of counsel for an indigent is required. *Coleman* v. *Alabama,* 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970). The court, looking, as it held it must, to Alabama law to determine the purpose of that state's preliminary hearing, found that, since a grand jury indictment could have been sought without having it, the hearing was not a step required in prosecution, but was conducted for the sole purpose of determining whether there was sufficient evidence against the defendant to warrant presenting the case to the grand jury, and if there was, to fix bail. Still, according to the United States Supreme Court, a preliminary hearing under such circumstances is a critical stage requiring the assistance of counsel to an accused.

In Arkansas, as in Alabama, the holding of the preliminary hearing is discretionary. *Jeffries* v. *State,* 255 Ark. 501, 501 S.W. 2d 600; *Ellingburg* v. *State,* 254 Ark. 199, 492 S.W. 2d 904. We have held that the purpose of our preliminary hearing is to determine whether the accused should be held to await grant jury action so that, in the meantime, he would not unlawfully be deprived of his freedom if there were not sufficient grounds for holding him. *Day* v. *State,* 185 Ark. 710, 49 S.W. 2d 380. Since that decision our Constitution has been amended to make an information by a prosecuting attorney an alternative to indictment by a grand jury. Amendment 21.

The United States Supreme Court, in reaching the decision in *Coleman* v. *Alabama,* supra, set out four major reasons why counsel was required at a preliminary hearing:

> Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of

the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

This case differs from *Coleman* only in that no grand jury indictment was returned against appellant; instead, he was tried on an information filed by the prosecuting attorney. The *Coleman* rationale set out above is fully as applicable when an information is filed subsequent to the hearing as it is when a grand jury indictment is the means of bringing the accused to trial.

The record in this case reveals numerous contradictions in testimony, which, if known to defense counsel prior to trial, could have provided a "vital impeachment tool." For example, Simpson's testimony indicated that the fight was still in progress when the officers arrived, and that he immediately told the first officers on the scene what had happened. When Officers Hairston and Hayes and Jewell Lofton testified, their testimony was that the two men were looking for something when the first police car arrived, and that, since appellant said there was no trouble and Simpson said nothing, those policemen were pulling away from the scene when other officers arrived and confirmed that this was the address where a disturbance had been reported. There was also a conflict in the statements concerning the recovery of Simpson's glasses, with the officers saying that appellant had been arrested and placed in the police car when the glasses were found. Both appellant and Simpson stated the glasses were recovered and returned by appellant. Jewell Lofton's testimony contained contradictory statements about whether appellant came to her door or whether she went out to the Simpson car. She also testified at the trial that she was listening to records when appellant arrived, but her earlier statement to Officer Hayes was that she had been asleep. This witness finally admitted she had been sick for a time since this incident, and said her

memory had "vacated" until she was served with a subpoena, at which point she once more remembered what had happened.

In view of appellant's version of the facts and his contentions concerning an illegal arrest and search, his counsel's knowledge of the inconsistencies in testimony as to the sequence of events beginning with the arrival of the first police unit and as to whether Simpson was ever left alone in his car at 317 Grove could have been of crucial importance in preparing appellant's defense. A preliminary hearing with counsel could have disclosed this information. Furthermore, such a hearing would have provided an opportunity to preserve the testimony of Miss Lofton, who admitted that illness had affected her memory and that she had completely forgotten the entire incident until she was served with a subpoena. Her memory was somewhat confused at the time of the trial, and required considerable refreshing. We do not know of any means more suitable than that employed by appellant's counsel to seek to have, before trial, the benefits he might have had from having participated in a preliminary hearing.

We will presume error to be prejudicial in the absence of an affirmative showing to the contrary, unless it manifestly is not. *Cabbiness v. State,* 241 Ark. 898, 410 S.W. 2d 867; *Connelly v. State,* 232 Ark. 297, 335 S.W. 2d 723. If the record had revealed that the conflicting statements of the witnesses had been disclosed to appellant's attorney or that the prosecution had furnished appellant with a complete transcript of the hearing, we might be able to say, depending upon the nature and content of such disclosures, that appellant had not been prejudiced by deprivation of the assistance of counsel at the preliminary hearing. Since we cannot say with assurance that the error in this case was not prejudicial, we must reverse the conviction. *Upton v. State,* 254 Ark. 664, 497 S.W. 2d 696.

However, since the previous trial provided appellant's counsel with access to all the information that a preliminary hearing could hav afforded, and perhaps more, there is no necessity to remand the case for another preliminary hearing, but the judgment must be reversed and the cause remanded

for new trial. Since we cannot say with assurance that the error was not prejudicial, no other result seems possible under the clear mandate of the United States Supreme Court in *Coleman* v. *Alabama*, supra.

Appellant also contends the judgment was not supported by substantial evidence. On appeal, we must view the evidence in the light most favorable to the appellee. *Murphy* v. *State*, 248 Ark. 794. 454 S.W. 2d 302; *Stanley* v. *State*, 248 Ark. 787, 454 S.W. 2d 72. Robbery consists of the taking of anything of value from the person of another by force or intimidation. Ark. Stat. Ann. § 41-3601 (Repl. 1964). The prosecuting witness, Simpson, testified that appellant assaulted him, clawed at him and tried to get his hands into Simpson's pockets. When the police arrived, Simpson told the officers what had occurred and that a diamond ring was missing from his hand. The appellant was arrested, and a search of his person recovered the ring from his shoe. We cannot say the evidence supporting the conviction was insubstantial.

We find appellant's allegation that Simpson's ring was recovered in a search pursuant to an illegal arrest and therefore improperly introduced into evidence to be without merit. A police officer may make an arrest without a warrant when he has reasonable grounds for believing that the person arrested has committed a felony. Ark. Stat. Ann. § 43-403 (Repl. 1964). We must look to the time, place and circumstances in determining the existence of the "reasonable grounds" required by the statute and the "probable cause" required by the Fourth Amendment to the United States Constitution. *Smith* v. *State*, 241 Ark. 958, 411 S.W. 2d 510. The police officers went to the scene at approximately 1:00 a.m. in response to a report that a fight was in progress. They found appellant and Simpson, with the latter appearing quite disheveled and having an abrasion on his head. Simpson told the officer that appellant had attacked him, and that his diamond ring was missing. To have probable cause for arrest, the police must have more than a mere suspicion that criminal activity had occurred, but the information need not be tantamount to the degree of proof necessary to sustain a conviction. *Jones* v. *State*, 246 Ark. 1057, 441 S.W. 2d 458. The circumstances here gave rise to more than a mere suspicion of

criminal activity. Since the search was pursuant to a valid arrest, the introduction of the ring into evidence was not improper. *Jones* v. *State,* supra.

The judgment is reversed and the cause remanded for a new trial.