James Edward WILLIAMS *v.* STATE of Arkansas

CR 74-157                                    523 S.W. 2d 377

Opinion delivered June 2, 1975

*Bobby McDaniel,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant James Edward Williams was charged with the crimes of burglary and grand larceny. He pleaded not guilty and was found by a jury to be guilty of both charges. After deliberation on appellant's habitual offender status the jury fixed his sentence at 21 years and 6 months on each charge, to run consecutively for a total of 43 years.

Appellant argues for reversal that there was insufficient evidence to sustain a conviction for burglary and grand larceny. He asserts there was no proof adduced by the state placing him in the store which was burglarized, nor any evidence of his indirect participation in the burglary. His conviction, he argues, was based solely on circumstantial evidence, sufficient to raise no more than a suspicion of guilt. On appeal, in criminal cases, as in others, the evidence must be viewed in the light most favorable to the appellee, and the judgment affirmed if there is any substantial evidence to support the jury's verdict. *Parker* v. *State*, 252 Ark. 1242, 482 S.W. 2d 822.

Mr. Bob Snider, manager of the OTASCO store in Jonesboro, testified as to the condition of his store as it was found on Tuesday following the Labor Day weekend, 1973. According to him, someone had gained access to the store by kicking out a window. The office had been ransacked. The locked security case holding his inventory of handguns had been broken into and fifteen pistols, which he, using business records, identified by make, caliber and value, were taken. He identified two missing automobile tape players by serial number and price. The bottom of the store safe had been broken out, the cash register hammered on, and $179 in change kept in rolls was missing.

Albert Brumley, manager of a used car lot in Jonesboro, testified that early on the morning after Labor Day he purchased from appellant, for $20, two auto tape players packaged in sealed boxes stamped 'OTASCO', and got $63 in rolled change from him as well. John Hitchcock, the police officer Brumley notified, and to whom he delivered the tape players when he determined they were stolen, identified two tape players in court as the ones he received from Brumley.

Their serial numbers matched the numbers the OTASCO manager testified were on the tape players missing from his store after the burglary.

Matthew Prunty testified that on September 3, at 7:30 a.m., he drove appellant, at the latter's request, to Pocahontas "to the man what buys old guns." Appellant had with him a metal box and a paper box. On the way, he testified, appellant said only one thing, "Man, I been up all night." The witness testified that when he inquired as to the reason, appellant just dropped his head and "didn't say nothing else." He testified that Mike Skeet, the man they were going to see, bought guns from appellant for $125, that Mike took the metal box, and when the witness and appellant returned to Jonesboro, appellant gave the witness a pistol and a Timex watch, which were not old items.

Michael George Skeet testified that some date around Labor Day, 1973, (he didn't remember what date exactly) he purchased fourteen handguns from appellant, for $120. He said that appellant was accompanied by Matthew Prunty, but appellant alone was dealing in the guns. Skeet identified a number of guns in the courtroom as those he had purchased from appellant. The make, caliber, and serial number of those guns matched those of the guns taken from OTASCO.

The fact that evidence is circumstantial does not render it insubstantial — the law makes no distinction between direct evidence of a fact and evidence of circumstances from which a fact may be inferred. *Lancaster* v. *State*, 204 Ark. 176, 161 S.W. 2d 201; *Parker* v. *State*, 252 Ark. 1242, 482 S.W. 2d 822; *Simmons* v. *State*, 255 Ark. 82, 498 S.W. 2d 870. The argument made by appellant here has been rejected by this court many times. Possession of property recently stolen from burglarized premises, not satisfactorily explained to a jury, is sufficient to support a verdict of guilt of both the burglary and the larceny, even though there is no other evidence to show that the possessor had committed the crimes with felonious intent, either in person or by being present aiding, abetting and assisting another. *Taylor* v. *State*, 254 Ark. 620, 495 S.W. 2d 532; *Richie* v. *State*, 250 Ark. 700, 466 S.W. 2d 462; *Duty* v. *State*, 212 Ark. 890, 208 S.W. 2d 162; *Johnson* v. *State*, 190 Ark. 979, 82 S.W. 2d 521.

Appellant next assigns as error the refusal of the trial court to allow Paul Guilton, a defense witness, to testify because of his violation of the rule of sequestration of witnesses. Appellant had invoked the rule when the trial commenced. Appellant had testified in his own behalf that he had purchased the two tape players for $17 or $18 from a man from Memphis, who said he had gotten the tapes from his brother's place in Little Rock, assuring appellant they were not stolen, and saying he wanted enough money to get home to Memphis, having lost his wallet. This sale was supposed to have taken place on Labor Day morning, 1973, on East Washington Street in Jonesboro in the presence of Matthew Prunty. After appellant testified, Paul Guilton was called to the stand. The State objected on the ground that Guilton had been present in the courtroom. The trial court ascertained from Guilton that he had indeed been present from the beginning of trial that morning, and had heard all of appellant's testimony. It appears that Guilton, having been brought from jail in order to testify, found his way into the courtroom rather than the witness room, through no fault of, or complicity with, appellant. Over the vigorous exceptions of appellant's counsel, the trial court excluded Guilton from testifying, without ever inquiring about or considering the nature of the testimony.

The rule consistently applied by this court is that a violation by a witness of the rule of sequestration of witnesses, through no fault of, or complicity with, the party calling him, should go to the credibility, rather than the competency of the witness. *Harris* v. *State*, 171 Ark. 658, 285 S.W. 367; *Hellems* v. *State*, 22 Ark. 207; *Golden* v. *State*, 19 Ark. 590; *Pleasant* v. *State*, 15 Ark. 624. The power to exclude the testimony of a witness who has violated the rule should be rarely exercised. We have been unable to find any case in which this court has sustained the action of a trial court excluding the testimony of such a witness. While the witness is subject to punishment for contempt and the adverse party is free, in argument to the jury, to raise an issue as to his credibility by reason of his conduct, the party, who is innocent of the rule's violation, should not ordinarily be deprived of his testimony. *Harris* v. *State*, supra; *Aden* v. *State*, 237 Ark. 789, 376 S.W. 2d 277; *Mobley* v. *State*, 251 Ark. 448, 473 S.W. 2d 176.

Although the trial court has some discretion in the matter, its discretion is very narrow and more readily abused by exclusion of the testimony than by admitting it. *Harris* v. *State*, supra. It has even been held that failure to make a formal proffer of the testimony of a witness excluded upon no basis other than his violation of a sequestration order, without the knowledge, procurement or consent of defendant or defense counsel cannot be used to deprive the accused of his constitutional right to compulsory attendance of witnesses in his behalf. See *Braswell* v. *Wainwright*, 463 F. 2d 1148 (5 Cir., 1972). See Art. 2 § 10, Constitution of Arkansas.

The State argues that appellant's proffer of what he expected to prove by Guilton, which was made while the jury was deliberating, came too late for the trial judge to act on it or for the jury to consider it. However, as long as a century ago this court held that where a witness is rejected on the ground of incompetency it must be presumed the trial court would have excluded the evidence, however material it may have been. *Rickerstricker* v. *State*, 31 Ark. 207; *Miles* v. *St. Louis, I.M.&S. Ry. Co.*, 90 Ark. 485, 119 S.W. 837; *Triangle Lumber Co.* v. *Acree*, 112 Ark. 534, 166 S.W. 958; *Shephard v.* Mendenhall, 127 Ark. 44, 191 S.W. 237; *Powell Bros. Truck Lines, Inc.* v. *Barnett*, 194 Ark. 769, 109 S.W. 2d 673. The State's objection, as well as the trial court's ruling, in this instance, went purely and simply to competency of the witness to testify. *Hellems* v. *State*, supra; *Harris* v. *State*, supra. See also *Davenport* v. *Ogg*, 15 Kan. 363 (1873). In such a situation a proffer has played no part in the court's exercise of discretion and serves no purpose other than permitting the appellate court to determine whether there has been an abuse of that discretion.

In *Davenport*, the court articulated the rule widely followed thus:

> . . . The rule seems to be this: When the court below excludes evidence because the evidence, and not the witness, is supposed to be incompetent, the record must contain the evidence sought to be introduced, so that the appellate court may see whether it is competent or not; but where the court below excludes a witness because

the witness, and not his evidence, is supposed for any reason to be incompetent, then all that is necessary to be put in the record is enough to show whether the witness is competent or not upon the ground upon which he is excluded; and it is not necessary in such a case to put into the record what the witness would testify to. Where the competency of the witness is objected to for any particular reason, it will be presumed, unless the contrary appears, that no other reason for his exclusion exists. And hence, in such a case, all that is necessary, as a general rule, for the record to contain is enough to show that the particular reason given for the exclusion is not sufficient. In the present case the witness was excluded solely because she herself, without any encouragement from any one else, violated an order of the court. The record contains sufficient evidence to show that such reason is not sufficient, and hence the judgment of the court below must be reversed, and the cause remanded for a new trial.

In many other jurisdictions it has been held that no proffer is necessary when the trial court holds a witness incompetent or refuses to hear him at all. See, e.g., *Strader* v. *State*, 208 Tenn. 192, 344 S.W. 2d 546 (1961); *Seeba* v. *Bowden*, 86 S. 2d 432 (Fla. 1956); *Totten* v. *Miller's Estate*, 139 Ohio St. 29, 37 N.E. 2d 961 (1941); *In re Lynagh's Estate*, 177 S. 2d 256 (Fla. 1965).

The proffer here had no bearing on the trial court's ruling but is important only to enable this court to determine whether the trial court's discretion has been exercised to the prejudice of the party calling the witnesses. See *Powell* v. *State*, 133 Ark. 477, 203 S.W. 25. The situation is quite different from the court's sustaining an objection to a question propounded to a witness or where evidence, not a witness is excluded. The rule is well stated in *Latourette* v. *State*, 91 Ark. 65, 120 S.W. 411.

. . . The rule has been established by this court that, where error is assigned in the refusal of the court to hear testimony of a witness, the record must disclose the substance or purport of the offered testimony, so that this

court may determine whether or not its rejection was prejudicial. *Meisenheimer* v. *State*, 73 Ark. 407, 84 S.W. 494. In' other words, it devolves upon the appellant to show by the record here before he can complain of the ruling of the court as being prejudicial, that the offered testimony was relevant to the issue and should have been admitted.

See also, *Gooch* v. *State*, 150 Ark. 268, 234 S.W. 33; *Simmons* v. *State*, 124 Ark. 566, 187 S.W. 646. It was concisely stated thus in *Rickerstricker* v. *State*, 31 Ark. 207:

To show in what manner he was prejudiced by the ruling of the court in the rejection of the witness, it was not necessary for the defendant to set out what he expected to prove by her.

A party introducing a witness, unless required by the court, is not bound to state in advance what facts he expects to prove by him; and when, without such requirement, the court excludes a witness *in limine*, its decision must be understood to have been made upon an objection to the witness himself, and not to the testimony he is expected to give. It is only where evidence is ruled out on account of the matter that it is necessary to set out in the statement of the case, what the party expected or offered to prove; and where a witness is rejected on the ground of incompetency, it must be presumed that the witness would have been rejected, no matter how material the evidence might have been.

In spite of the language of *Rickerstricker*, we feel that the sounder position is that a proffer must be made in order to enable this court to determine whether the exclusion of the witness was prejudicial to the defendant. Our own cases on the subject can best be harmonized by this approach. But since this is the only purpose to be served by the proffer, the time when it is made is immaterial, so long as it appears in the record made in the trial court.

'According to the proffer, Guilton would have testified

that he saw appellant purchase two stereo tape players from an unknown individual on September 3, 1973, in front of the funeral home on East Washington, that Matthew Prunty was present and observed the transaction, and that appellant paid $17 or $18 for the tapes. In view of appellant's testimony in this regard, and the fact that Matthew Prunty, a witness for the State, on cross-examination denied having witnessed any sale of tape players to appellant, we cannot say it is manifest appellant was not prejudiced when he was deprived of Guilton's testimony. *Graves v. State*, 256 Ark. 117, 505 S.W. 2d 748. As a matter of fact the proffer shows that the testimony was relevant and material rebuttal testimony and that the trial judge abused his discretion by refusing to allow the witness to testify.

Appellant also assigns as error the trial court's ruling allowing the State, over appellant's objection, to question appellant with regard to a statement he allegedly made to the sheriff of Craighead County during his incarceration in the Craighead County jail. During appellant's testimony he denied having gone to Pocahontas with Matthew Prunty and having ever seen Michael Skeet prior to trial. On cross-examination the prosecutor asked appellant if he made any remark or statement to the sheriff. Appellant denied having done so. The prosecutor then called the sheriff, and he testified that appellant said he went to Pocahontas with Matthew Prunty and that he had with him the guns in question. Appellant's counsel objected throughout, asking for a hearing outside the jury's presence to determine the voluntariness of any statement made by appellant. The prosecutor responded that the purpose of the testimony was for impeachment only, citing *Harris* v. *New York*, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971), where the United States Supreme Court held that statements of an accused inadmissible in the prosecution's case-in-chief because of failure to warn the accused of his right to appointed counsel could nevertheless be used to impeach the accused's credibility.

In this court appellant argues that a *Denno* hearing should have been required to determine the voluntariness of the statement allegedly made by appellant before the State was allowed to use it for impeachment purposes. He argues

that this court, in *Rooks* v. *State*, 250 Ark. 561, 466 S.W. 2d 478, erroneously extended the ruling in *Harris* v. *New York*, supra, to an issue not presented in *Harris*. In *Rooks*, supra, the appellant argued that *Jackson* v. *Denno*, 378 U.S. 368 (1964), 84 S. Ct. 1774, 12 L. Ed. 2d 908, and Ark. Stat. Ann. § 43-2105 (Supp. 1973) required a *Denno* hearing to determine the voluntariness of her in-custody statement before the State could use it to impeach her. We stated that, although in *Harris* there was no contention that the contradictory statement was involuntary, that court had noted that the voluntariness of a confession is irrelevant when the defendant becomes a witness. This was in a footnote to the opinion in *Harris* where the Court hypothesized a situation in which an accused, having confessed fully to a homicide and having led the police to the body of the victim under circumstances making his confession inadmissible, takes the stand and denies every fact disclosed to or discovered by the police as a "fruit" of his confession. Answering *Harris'* argument that the accused should be allowed to do so free from confrontation with his prior statements and acts, the court stated that the voluntariness of the confession would, on this thesis, be totally irrelevant, and rejected "such an extravagant extension of the Constitution."

Appellant characterizes the court's hypothesis and conclusion derived therefrom as dicta, arguing that the rule in *Harris* is limited to cases where no claim is made that the statements were coerced or involuntary. To apply *Harris* to a situation in which the voluntariness or coercion of a statement is asserted, argues appellant, was an erroneous overextension. Appellant points out that prior to trial he filed a motion for hearing on voluntariness of any admission or confession whether written or oral made by defendant, together with a supporting brief, and was assured by the trial court that an out-of-court hearing would be afforded him "if and when the same is offered." In addition, appellant points to the fact he had subpoenaed two witnesses, whose testimony would have related to the hearing on the voluntariness of any statement of appellant, that this was made known to the trial court when the prosecutor, in chambers prior to the start of trial, asked the purpose for the calling of the witnesses, and that the trial court responded, "Well, that will be heard outside the presence of the jury . . . ".

The rule of *Harris* was fully applied and fully treated recently by the Supreme Court of the United States in *Oregon v. Hass*, 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). There the accused was given and accepted full Miranda warnings and then, later, in a patrol car, stated he would like to telephone a lawyer but was told he would have to wait until he and the officer reached the station. The issue was whether the information given could be used to impeach him. The court ruled it could, applying *Harris* v. *New York*. Once again the court allowed the use of the statements to impeach, provided "the trustworthiness of the evidence satisfies legal standards." The court, having noted the absence of any claim that the statements were involuntary or coerced, said: "If, in a given case, the officer's conduct amounts to abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness." Yet, we are unable to read into either *Harris* or *Hass* the requirement that before these in-custody statements can be used to impeach an accused's testimony, a *Denno* hearing must be held to determine their voluntariness, especially in view of the court's hypothetical in *Harris,* and its conclusion that "the voluntariness of the confession would be totally irrelevant." And though appellant may allude to coercion, no evidence of any coercion or abuse on part of the police was introduced or offered. Neither does he ever actually argue directly that any statement of his was coerced or involuntary. All he does is point to his request for a *Denno* hearing, should any attempt be made to introduce any statement of his in evidence. Appellant certainly could have, but did not, put to the jury the question of voluntariness of the statement as reflecting on the weight and credibility which should be accorded it, by offering evidence on the subject. *Kagebein* v. *State,* 254 Ark. 904, 496 S.W. 2d 435; *Walker* v. *State,* 253 Ark. 676, 488 S.W. 2d 40. We find no error on this point, and decline the invitation to overrule *Rooks.*

Appellant argues that the trial court erred in permitting the prosecuting attorney to ask him, on cross-examination, about charges against witnesses he had subpoenaed solely to appear in any *Denno* hearing which might take place. As pointed out earlier, there was inquiry, in chambers, prior to

trial, into what purpose appellant had for having subpoenaed two prospective witnesses, the Smith brothers, and it was stated the purpose would be made known at the *Denno* hearing, which never took place. Appellant testified in his own behalf, and the picture painted by him was one of having been framed or set up. Several questions were propounded on cross-examination about appellant's failure to produce witnesses to corroborate his story. The appellant was then asked if he knew the Smith brothers and answered that he did. He was further asked if they were willing to "come in here and back up your story." He responded, "Yes, sir, they are. I am quite sure." The prosecutor then asked Williams if he had heard that the Smith brothers were wanted for murdering a police officer in Missouri. Appellant's attorney's objection was overruled.

Appellant argues this questioning was irrelevant to any issue in the case, since the Smith brothers did not testify, and that it was prejudicial and inflammatory. Of course, where an accused takes the stand in his own behalf, he subjects himself to the same rules of cross-examination as any other witness. *Montague* v. *State,* 219 Ark. 385, 242 S.W. 2d 697. Wide latitude is permitted in cross-examination as to contradicting his defense, or to impeach his credibility as a witness. *Peterson* v. *Jackson,* 193 Ark. 880, 103 S.W. 2d 640. The limits lie largely within the sound judicial discretion of the trial court. *Hollingsworth* v. *State,* 53 Ark. 387, 14 S.W. 41. In the context in which it occurred, however, we must hold that this inquiry was outside the limits of the trial court's discretion and should not have been permitted.

Appellant challenges the legality of his arrest, arguing that two bench warrants served on him, charging him with burglary and grand larceny, were issued by the circuit court clerk, one not authorized to issue arrest warrants, and without any "independent determination of probable cause by a neutral, detached magistrate as required by the Fourth Amendment of the United States Constitution." However, appellant admits he was arrested and jailed the day before the bench warrants referred to above were issued. The circumstances surrounding his initial arrest are not set out, leaving us to speculation.

Of course, a police officer can make a warrantless arrest when there are reasonable grounds to believe the person arrested has committed a felony; neither an affidavit of probable cause nor a warrant need be obtained. Ark. Stat. Ann. § 43-403 (Repl. 1964); *Ellingburg* v. *State*, 254 Ark. 199, 492 S.W. 2d 904; *Jones* v. *State*, 246 Ark. 1057, 441 S.W. 2d 458. "Reasonable grounds" have been treated as virtually synonymous with the probable cause requirement of the Fourth and Fourteenth Amendments. *Ellingburg* v. *State*, supra, footnote 1. See also, *Johnson* v. *State*, 249 Ark. 208, 458 S.W. 2d 409. The substance of all definitions of probable cause is a reasonable ground for belief of guilt. *Brinegar* v. *United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879. On appeal, all presumptions are in favor of the trial court's ruling and the burden is on the appellant to demonstrate error, which is not done by a mere showing that under some circumstances there might have been error. *Smith* v. *State*, 194 Ark. 1041, 110 S.W. 2d 24. He has failed to meet this burden. Furthermore, appellant would not have been entitled to release, even if his arrest had been illegal. *West* v. *State*, 255 Ark. 668, 501 S.W. 2d 771. *Ellingburg* v. *State*, supra; *Perkins* v. *City of Little Rock*, 232 Ark. 739, 339 S.W. 2d 859. Illegal arrest, standing alone, does not void a subsequent conviction. *Frisbie* v. *Collins*, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541.

Because of the error indicated the judgment is reversed and the cause remanded.

HARRIS, C.J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. I disagree with the reversal in this case. The appellant invoked the provisions of Ark. Stat. Ann. § 43-2021 (Repl. 1964) to exclude from the courtroom any witnesses, not at the time under examination, in order that they would not hear the testimony of other witnesses. Upon such a request being made by a defendant, the aforementioned statute provides that the judge shall exclude such witnesses. The court questioned Guilton about how long he had been in the courtroom, and the witnesses that he had heard testify. Guilton replied that he had heard the appellant testify. The exclusion of witnesses was, as stated, requested by appellant himself,

and I certainly can find no abuse of the trial court's discretion in the ruling made.

Not only that, but no proffer of the testimony of Guilton was made until after the giving of instructions to the jury, the conclusion of argument by respective counsel, and the retirement of the jury to the jury room. At that time, the proffer was made. This came too late, in my opinion.

I would affirm.