Roy Lee DIXON *v.* STATE of Arkansas

CR 76-164                                        545 S.W. 2d 606

Opinion delivered January 10, 1977
(In Banc)

858

*Kenneth C. Coffelt,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. At a bifurcated trial the jury first found the appellant, Roy Lee Dixon, guilty of possession of heroin with intent to deliver, as charged. The jury then found Dixon to be a habitual criminal, with three previous felony convictions, and imposed a 40-year sentence. The principal question is whether there is sufficient evidence to support the finding that Dixon intended to deliver the heroin that was found in his possession.

The witness Andol testified that after having pleaded guilty to a drug charge he volunteered to assist undercover officers in making a purchase of heroin from Roy Lee White (not the same person as the appellant, Roy Lee Dixon), who was apparently known to Andol as a seller of drugs. Andol supplied White's telephone number to an officer, who dialed the number with Andol listening in on an extension. When a

woman answered, Andol asked to speak to Roy Lee White. Over a defense objection that no foundation had been laid, Andol testified that Roy Lee White came to the phone. Andol arranged for White to bring two $20 bags of heroin to Andol's motel room at a certain time later in the day.

Andol waited in the motel room, with two officers concealed in the bathroom and a third one stationed outside. White arrived in his car, accompanied by Dixon, whom Andol had never seen before. White and Dixon entered Andol's room together. White handed two foil packets to Andol, assuring him that it was good "skag," a slang term for heroin. The two officers then stepped from the bathroom, identified themselves, and placed White and Dixon under arrest.

White submitted, but Dixon ran out the door. The third officer subdued him and brought him back into the room. The officers searched Dixon, finding in his pocket a small match-box containing six tinfoil packets. White asserted that the two packets which he had delivered contained brown sugar, a claim that was verified by chemical analysis. Dixon's six packets, however, were found to contain 561 milligrams of a substance that was 5.5% pure heroin. The chemist considered that to be an average percentage for (illegal) heroin.

Upon the issue of intent to deliver we must at the outset lay aside the rebuttable presumption that arises from the possession of more than 100 milligrams of heroin. Ark. Stat. Ann. § 82-2617 (d) (Supp. 1975). The statute refers merely to 100 milligrams of "heroin." Does that mean pure heroin, of which Dixon possessed only 30.855 milligrams, or an adulteration, of which Dixon possessed 561 milligrams?

We must conclude from the statute as a whole that the reference is to pure heroin. In several instances the statute refers to any material, compound, mixture, or preparation that contains "any quantity" of specified prohibited substances (or uses similar language). Four such instances in the statute are § 82-2605 (d), § 82-2609 (b), § 82-2609 (c) (1), and § 82-2611 (b). On the other hand, the rebuttable presumption of an intent to deliver heroin arises only from

the possession of more than 100 milligrams of "heroin." Inasmuch as the draftsmen of this Uniform Act took pains to prohibit traffic in many specified drugs in an adulterated form, we must infer that the omission of similar language with reference to heroin was deliberately selected to exclude such adulterations.

Absent the statutory presumption, we find no basis except speculation for a conclusion that Dixon possessed the small packets of adulterated heroin with the requisite intent to deliver. The telephone call was to White, who arrived with the stipulated *two* packets of some substance (actually brown sugar) that had been ordered. If the State were contending that Dixon was an accomplice, under the circumstances, in the delivery of the brown sugar, its contention might be supported by our holding in *Hartman* v. *State*, 258 Ark. 1018, 530 S.W. 2d 366 (1975). But that is not what the State argues. Instead, it is contended that Dixon, although he uttered not one word from the time he entered the motel room until he was apprehended after his flight, brought *six* packets of heroin to the motel with the intention of selling *two* of them to Andol. It may be that such a transaction would eventually have been proposed if the purchasers had somehow discovered that they were being offered brown sugar and had demanded genuine skag. But the officers foreclosed that speculative possibility by emerging from concealment and making the arrests. We are compelled to rule that the proof is insufficient to show that Dixon possessed the heroin with the required intent to deliver.

The appellant next contends that the search of Dixon's person was illegal, because he was not advised of his "constitutional rights." Apparently the reference is to a Miranda warning, which the officers asserted they gave before the search. That warning, however, has to do with the right of a suspected person to remain silent. It is not essential to a search. Here the search was proper as an incident to what we hold to have been a lawful arrest, in view of Dixon's having arrived with White and having fled when the officers appeared. See *Graves* v. *State*, 256 Ark. 117, 505 S.W. 2d 748 (1974).

The appellant also states as points for reversal, without any citation of authority and actually without any real argument, that proof of the telephone conversation was not admissible and that the sentence is excessive. In effect the court is asked to research the law and to hold in favor of the appellant if the result of our labor so demands. We must decline that invitation. We adopt the position taken by the Supreme Court of Oklahoma in its own syllabus in *Irwin* v. *Irwin,* 416 Pac. 2d 853 (1966): "Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent without further research that they are well taken."

We come, lastly, to the disposition of the case. The proof does not support the jury's finding of possession with intent to deliver, but it does support the lesser included offense of mere possession. In this situation we may, depending upon the facts, "reduce the punishment 'to the maximum for the lesser offense, reduce it to the minimum for the lesser offense, fix it ourselves at some intermediate point, remand the case to the trial court for the assessment of the penalty, or grant a new trial either absolutely or conditionally." *Clark* v. *State,* 246 Ark. 876, 440 S.W. 2d 205 (1969). We pointed out in *Bailey* v. *State,* 206 Ark. 121, 173 S.W. 2d 1010 (1943), that our decision may echo the verdict, as by imposing the minimum punishment for the lesser offense when the jury has imposed the minimum for the greater. In the case at bar the jury found three previous convictions and fixed the penalty at 40 years, or two thirds of the difference between the minimum of 30 and the maximum of 45 years. The range of punishment for a fourth offender, as the jury found Dixon to be, is not less than the maximum for the offense and not more than 1 ½ times that maximum. Ark. Stat. Ann. § 43-2328 (Supp. 1975). The maximum punishment for the mere possession of heroin, a Schedule I drug under the Uniform Act, is 5 years. Section 82-2617 (c). The range of punishment for a fourth offender is therefore 5 to 7 ½ years. We accept the jury's choice of two thirds of the difference, or 6 years and 8 months.

Accordingly, in harmony with . *Bailey* v. *State, supra,* the

judgment will be so modified and affirmed, unless the Attorney General elects within 17 days to have the cause remanded for a new trial.

FOGLEMAN, J., dissents. HICKMAN, J., would remand for a new trial.

JOHN A. FOGLEMAN, Justice, dissenting. I would affirm the judgment in this case. I agree that there was no statutory presumption of intent to deliver heroin in this case. But the circumstances here are certainly sufficient to afford a basis for a finding that Dixon's possession was with the intent to deliver. Andol, a drug user, who was held on a felony charge relating to drugs, had the telephone number of White and gave it to a police officer, as that of a dealer in heroin. Andol talked to White and placed an order for "skag" and asked him to deliver it to Room 115 at Days Inn Motel. Andol said that "skag" was a "street term" for heroin. Two black men, one answering a description given the police officers by Andol, pulled into the motel parking lot. Both White and Dixon, both of whom were black, immediately thereafter appeared at the door to the motel room. Although White handed over two packets which actually contained brown cake powder, or brown sugar, after responding affirmatively to Andol's inquiry whether he had the "junk," it was Dixon who actually had in his possession what Andol had ordered, who appeared with White in response to that order, and who made a break for the door and had to be subdued in effecting his arrest. The fact that Dixon possessed six packets instead of only two ordered by Andol certainly is not inconsistent with an intent to deliver. A dealer in any commodity hardly ever confines his inventory to the amount required to fill a single order.

If Dixon had no intent to deliver heroin, why did he accompany White to the motel carrying the substance Andol ordered? And why did he leave the vehicle in which the two pulled into the parking lot and accompany White to the room designated for delivery? And why did he run when the police officer appeared? The jury could reasonably have drawn the inference that the answer to these questions was that Dixon intended, if all went well, to make the delivery to Andol pursuant to the order placed. The fact that Andol knew White

864

but did not know Dixon is also a circumstance to be considered.

It must be remembered that Dixon is not charged with making a sale or a delivery. He is charged with possession of the drug with intent to deliver.