Dennis CORDES *v.* STATE of Arkansas

CR 78-141                                        577 S.W. 2d 609

Substituted opinion on rehearing
delivered March 5, 1979
(In Banc)

*Erwin L. Davis,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice, on rehearing. Upon separate charges of delivering a controlled substance, the appellant Dennis Cordes, then 26, was twice tried by jury in 1974, was found guilty at each trial, and received a 10-year and a 15-year sentence. His original appeal from the first judgment was dismissed on motion of his attorney, who concluded that there was no reversible error. In 1976, upon a petition for postconviction relief, we gave Cordes permission to apply to the trial court for relief upon specified points. After that, an appeal to this court resulted in a remand for further proceedings. *Cordes* v. *State,* decided in an unpublished opinion on September 19, 1977. After a full evidentiary hearing, the record of which, with its exhibits, exceeds 600 pages, the trial judge denied relief. In this court three points for reversal are listed, but they can best be discussed as four points.

First, it is contended that Cordes's retained attorneys were guilty of ineffective representation in failing to call Cordes's codefendant, Bob Phillips, as a witness at each trial. At the first trial Phillips was a defendant and could not have been compelled to testify. He was not a defendant at the second trial, having pleaded guilty, but Cordes's attorney at that trial, Jeff Duty, testified at the hearing below that he interviewed Phillips before the trial and concluded that Phillips's testimony would not have been at all beneficial to Cordes. Phillips himself testified at the hearing below, but, despite be-

ing assisted by many leading questions, Phillips did not testify that, in the language of the petition for postconviction relief, "he was in possession of the controlled substance and that petitioner [Cordes] knew nothing of what was going on." To the contrary, Phillips equivocated, saying that he set up the sales and did *most* of the talking (with the purchaser). He admitted that Cordes, who accompanied him and drove the car to meet the undercover officer who made the buys, knew he had the drugs and was going to sell them. Phillips testified that Cordes did not receive any of the money from the two sales, but he would have received some from a third sale that fell through. Phillips had told Cordes's attorney that "[w]e were both in it. We were supposed to get the money." The record falls decidedly short of showing ineffective assistance of counsel within the test that we have adopted. *Sheppard* v. *State,* 255 Ark. 40, 498 S.W. 2d 668 (1973).

Second, ineffective assistance of counsel is also argued on the basis of counsel's failure to introduce medical records about Cordes's hospitalization following a motorcycle accident in February, 1974, and counsel's failure to call as witnesses two doctors, Dr. Sisco and Dr. Johnson, who treated Cordes at that time. The petition for postconviction relief asserted that the medical records would have been pertinent to show Cordes to be mentally incompetent and that the two doctors would have testified that Cordes was mentally incompetent prior to the commission of the offenses. Neither statement is established by the record. The hospital records would have showed that Cordes sustained a severe brain injury in the accident, but they did not show that he was mentally incompetent. Neither of the doctors was a psychiatrist, and there is no showing that they would have testified as the petition alleged. In fact, mental incompetency was not even an issue at the first trial, and at the second trial the defense of insanity was submitted to the jury upon conflicting expert testimony.

According to this record, neither of the doctors who treated Cordes for his injuries would have testified that he was mentally incompetent as a result of the motorcycle accident. In addition, there was much other evidence that could have been adduced to show the details of Cordes's

hospitalization and its effect upon Cordes. We cannot say that the attorneys' failure to introduce the records or to call the two doctors to the stand demonstrates ineffective assistance of counsel. To the contrary, both the doctors — Dr. Johnson orally and Dr. Sisco by letter — indicated to counsel that their testimony would be restricted to their actual treatment of the injuries.

Third, the only really serious question presented by the record is whether, at the two trials, Cordes was in such a state of mental incompetency as to be, in the language of the petition for postconviction relief, "of little or no assistance to his attorney in the preparation of petitioner's defense. Thus petitioner was incompetent to stand trial."

The evidence on this point is so voluminous that we shall attempt only to give a summary sufficient to show why it cannot be said that the trial judge's findings are clearly against the preponderance of the evidence.

The expert testimony is hopelessly in conflict. Cordes's principal expert witness, Dr. Ragsdill, testified that as a result of the motc cycle accident Cordes had an organic brain syndrome as a consequence of the brain injury. He explained the syndrome as a defect in Cordes's functioning which prevented him from meeting the ordinary requirements of living. His diagnosis was that Cordes was "non-psychotic, with a psychotic element at times." He believed that Cordes had been unable to assist his attorneys at his trials, in September and December of 1974, and that, as of the postconviction hearing in March, 1978, if Cordes were to be tried again the next day "he would not be any assistance in his own defense." Cordes also introduced the testimony that was given in his behalf by Dr. Finch at the second trial, when insanity was a defense. Dr. Finch found that Cordes was with psychosis at that time. Attorney Duty testified that Dr. Finch made one of the best witnesses he had ever seen. At that trial, however, Dr. Finch's opinion was contradicted by that of Dr. Holman, a State Hospital psychiatrist, who testified that Cordes was without psychosis. It may be noted that the jury, after hearing both sides, rejected the defense of insanity and returned a verdict of guilty.

At the hearing below, the State's principal expert witness was Dr. Rosendale, who participated in one of the three State Hospital examinations (in 1974, 1976, and 1978) of Cordes, all of which found him to be without psychosis. Dr. Rosendale was of the opinion that Cordes was in full contact and that he could have supplied complete information if he had so desired. He described Cordes's organic brain syndrome as mild. He thought that Cordes could concentrate upon the tests given him if he wanted to. He indicated that in walking past the cells he had observed Cordes carrying on with the other patients, talking with them, kidding with them, and causing no problems whatsoever.

It is significant, in weighing the testimony, to note that many witnesses thought that Cordes's condition at the time of the postconviction hearing in 1978 was the same as it had been at his trials in 1974. Dr. Ragsdill testified that "I don't think that there is any reason in my mind to suspect that his mental condition was any different than it is now; so if he is psychotic now then he was psychotic then." Attorney Spears, who represented Cordes at the first trial, testified that Cordes exhibited about the same language ability and understanding patterns when Spears was representing him as he did on the witness stand at the postconviction hearing. Attorney Duty testified that he considered Cordes to be mentally competent both at his second trial and on the date of the postconviction hearing. Judge Cummings, who presided when Cordes testified at his second trial and again when Cordes testified at the postconviction hearing, stated in his findings: "I heard the trial before, and there is no difference in his testimony, manner, appearance, et cetera."

Thus Cordes's ability to assist his attorney at the postconviction hearing could be regarded by the trial judge as having a direct relation to his ability to assist his attorneys at his two trials. In that view, the record is replete with proof that Cordes was able to assist his counsel at the postconviction hearing. There are handwritten letters in the record, from Cordes to Judge Cummings and to the circuit clerk, having to do with his case, which show beyond question that he is articulate in correspondence. At the postconviction hearing he testified at length. Even allowing for the court

reporter's inability to reflect in the record Cordes's possible hesitations and stuttering, his testimony reveals no substantial inability to communicate. Several times Cordes's attorney asked for a short intermission so that he could confer with his client (with an ensuing line of questioning). Cordes himself spoke up from time to time. He reported having overheard the prosecutor mention Dr. Rosendale in a telephone conversation during the trial. He asked permission to question Dr. Ragsdill about a matter. He argued intelligently and at length with Judge Cummings about what he considered to be the judge's hostile attitude toward him (we find no such hostility on the part of the judge). He reminded his counsel to bring up the matter of jail time, with his alertness in that respect resulting in the judge's immediately announcing that Cordes would be given credit for 93 days of jail time. The record as a whole indicates that Cordes actively assisted his attorney during the hearing.

We do not imply that the question of Cordes's mental condition at his trials is free from dispute. To the contrary, there is persuasive evidence on each side of the issue. It is impossible, however, for us to say that the findings of the trial judge, who presided at both trials, who corresponded with Cordes from time to time, and who observed his conduct at the protracted postconviction hearing, are clearly against the preponderance of the testimony.

Fourth, it is argued perfunctorily that counsel, prior to the appeal that was ultimately dismissed, should have discussed with Cordes the possible defense of entrapment as a point to be urged on appeal. There is no evidence whatever of entrapment, and the point, as argued, presents nothing for review under the Dixon rule. *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606 (1977).

The judgment is affirmed and the petition for rehearing denied.