## Bob HULVA *v.* ARKANSAS STATE BOARD OF DENTAL EXAMINERS

82-109                                    642 S.W.2d 296

Supreme Court of Arkansas
Opinion delivered November 22, 1982

*Peggy O'Neal,* for appellant.

*William H. Trice, III,* for appellee.

GEORGE ROSE SMITH, Justice. The State Board of Dental Examiners brought this suit to enjoin the appellant, Bob Hulva, from engaging in the practice of dentistry without a license. This appeal, which comes to us under Rule 29 (1) (a), is from a decree granting the injunction. For reversal it is argued that the governing statutes are unconstitutional for a number of reasons. We affirm the decree.

Hulva is not qualified to be licensed as a dentist, not having been to any medical or dental school or having graduated from high school. More than 20 years ago he worked for a few years in a dental laboratory and learned how to make dentures. With that experience he set up his own dental laboratory next to his home in Van Buren. None of his customers are referred to him by a licensed dentist. His work consists of taking either one or two impressions of the customer's mouth, making the dentures, and delivering them to the customer. He is not trained to take x-rays or to diagnose or treat diseases of the mouth or gums. He makes dentures primarily for elderly people who either are in nursing homes or cannot afford the prices charged by dentists. He does not advertise.

The statutes, even before a 1981 amendment passed after this suit was filed, required that dental laboratories deliver their products through a licensed dentist, who ordinarily takes or has the impressions taken in his office and sends the impressions to the laboratory with a specific description of the work to be done. Ark. Stat. Ann. §§ 72-543 and -545 (Repl. 1979). Dr. Gill, a member of the Board, testified that he had four years of dental school and took an examination before obtaining his license to practice dentistry. In his training as a dentist he was educated to diagnose diseases, malignancies, and other conditions in the mouth that might interfere with the wearing of dentures. He testified that he examines the patient's mouth and usually takes x-rays to determine if there are any areas that might be a detriment to the wearing of a denture. He takes the impressions and either makes the appliance himself or sends the impressions to a qualified laboratory. When the appliance comes back he seats it in the patient's mouth and establishes certain relationships to be certain that the appliance is correct. The

final responsibility for the functioning of the denture rests on the dentist.

Hulva challenges the validity of our statutes primarily on the ground that, contrary to the due process and equal protection clauses, he is being arbitrarily deprived of his livelihood, because no special skill or training is required for the work that he does. Such laws, however, have been upheld as a proper exercise of the police power for so many years and in so many jurisdictions that a detailed review of the cases is unnecessary. What we said almost a century ago is still true:

> The legislative judgment that the welfare of the public requires that those practicing the dental profession shall possess the necessary skill and learning, and shall obtain a certificate, is probably conclusive; but if it were not, the court must take judicial knowledge that it is a profession requiring skill. The fact that the dentist employs his professional skill upon an important part of the body is, of course, known to everyone, and cannot be unknown to the courts. As this is known, it must follow that it may also be judicially known that one unskilled in the profession may injure the person who employs him. As this is so, then ... the Legislature may prescribe the qualifications of those permitted to practice the profession.

*Gosnell* v. *State,* 52 Ark. 228, 12 S.W. 392 (1889). Accord: *Missionary Supporters* v. *Ark. State Bd. of Dental Examiners,* 231 Ark. 38, 328 S.W.2d 139 (1959). Considerations such as those attested to by Dr. Gill demonstrate that our statutes are a permissible exercise of the state's police power in the area of public health.

An Idaho case relied upon by the appellant, *Berry* v. *Summers,* 283 P.2d 1093 (1955), is not in point. There the statute that was held invalid provided in effect that only a licensed dentist could work in a dental laboratory, even though the worker performed no work whatever in the oral cavity of any person, took no impressions, and in fact had no contact at all with the ultimate recipient of the denture.

*Needless to say, Hulva is free to accept that kind of employment if he chooses.*

The appellant's remaining arguments require little comment. The statutes do not delegate legislative power, because the Board has made no regulation or order affecting Hulva that is anything more than the execution of the legislative mandates. We fail to see how the statutes are overly broad or indefinite insofar as they specifically prohibit the kind of dental work that Hulva is engaged in. Finally, the perfunctory argument that the statutes are in restraint of trade need not be considered, under the *Dixon* rule. *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606 (1977).

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I dissent because I do not believe the appellant is "practicing dentistry" within the meaning of Ark. Stat. Ann. § 72-543 (Supp. 1981). Reduced to its most simple terms the Arkansas State Board of Dental Examiners wants the appellant enjoined from selling teeth unless a dentist receives a commission on such sale. There is no doubt that the board would clearly allow appellant to do exactly the same work he has been doing, except for the free services, provided he ran the business through the account of a practicing dentist.

I have no dispute with the board nor the majority opinion that the state may, under its police powers, regulate the practice of dentistry. However, it clearly cannot prohibit a merchant from selling dental cleaners such as toothpaste. The narrow interpretation given by the majority would probably apply to brushing one's teeth thereby making such action "practicing dentistry." Clearly, the examination and/or pulling of a child's tooth, by a parent, is forbidden under the broad terms of the majority's interpretation of this act. Certainly, the fitting of mouth pieces by coaches and trainers in athletic events is not authorized by one who is not licensed to practice dentistry.

The pertinent part of Ark. Stat. Ann. § 72-543 is stated as follows:

> . . . "practicing dentistry" shall mean and include examination, diagnosis, treatment, repair, prescription and/or surgery of or for any disease, disorder, deficiency, deformity, condition, lesion, injury or pain of the human oral cavity, teeth, gingivae and soft tissues, and the diagnosis, the surgical and adjunctive treatment of the diseases, injuries and defects of the human jaws and associated structures, and shall also include the sale or offer for sale of those articles or services of dentistry enumerated in subsection (A) of Section 12 [§ 72-545] of this Act.

The appellant was not treating, repairing, prescribing, performing surgery, or examining the clients for treatment of any kind. Unless he was doing acts which include examination, diagnosis, treatment, repair, prescription and/or surgery, he would not be prohibited from operating under the terms of this statute. There is no claim that he was doing surgery or diagnostic examinations. Neither was he treating his clients for disease, injuries, or defects of the human jaws and associated structures. However, he was probably violating the provisions of Ark. Stat. Ann. § 72-545 (Repl. 1979). This statute prevents any person other than a licensed dentist from selling or delivering to the general public services or goods relating to construction, alteration, repairing, and cleaning or polishing of teeth or bridges. This statute excepted from the prohibition the same acts as long as the services or materials were delivered to or for a licensed dentist. This statute is so broad it would prevent the sale and use of mouth pieces commonly used in athletics to protect participants from injury.

One of the most unfortunate aspects of this decision is that it will prohibit the appellant from performing free or low cost services to the needy and elderly in his community. After all, these are people who may be unable to afford the services of a dentist. In any event, I view the statutes regulating the practice of dentistry to include manufacturing false teeth, as unnecessary for the preservation of the

health, welfare and safety of the people of Arkansas. There is no dispute but that appellant would be able to continue this same work provided it were to be routed through the office of a dentist. This clearly is not in the interest of the public. I agree that one does not have an absolute right to practice his trade or profession but the Constitution provides that the limitation must bear a reasonable relation to the trade or profession. *Dent* v. *West Virginia,* 129 U.S. 114 (1889). The majority rely on the case of *Missionary Supporters, Inc.* v. *Ark. State Bd. of Dental Examiners,* 231 Ark. 38, 328 S.W.2d 139 (1959). However, the action sought to be prohibited in that case was the training of missionaries who would do the dental work. In *Missionary,* the court found that it was uncontroverted that the appellant's practice clearly came within the terms of the statutes defining the practice of dentistry. It appears to me the action prohibited in the *Missionary* case was the training of missionaries who, in the course of their studies, practiced dentistry on some 950 patients. I agree that one should not be allowed to set up an unapproved school of dentistry and license anyone who was able to complete a ten to twelve week course. However, when it comes to the simple task of manufacturing a set of false teeth I feel that any person who is able to do so should not be prohibited from doing so. There is no attempt to practice dentistry by such a person. It is much like fitting a pair of shoes or a pair of sunglasses. Certainly, the state would not prohibit a clerk from selling sunglasses or shoes on the basis of infringing upon oculists or podiatrists. As I see it, there is no more danger of an adverse effect to the public by the actions of this appellant than from the clerks last mentioned.

I would allow the appellant to manufacture teeth so long as he refrained from the practice of dentistry, as defined under our statutes.