Rickie Darnell LONG *v.* STATE of Arkansas

CR 87-95                                       742 S.W.2d 942

Supreme Court of Arkansas
Opinion delivered January 25, 1988

*Stephen R. Giles*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Rickie D. Long and Charlie Ray Johnson were charged with the crimes of aggravated robbery and theft of property. The charges grew out of the armed robbery of a Chicken Country restaurant in Pine Bluff on September 26, 1982 by Charlie Ray Johnson. Johnson pled guilty to the crimes.

Attorney John L. Kearney was appointed to represent Long and a jury trial was held on June 7 and 8, 1983. Johnson testified that he and Long planned the robbery and divided the proceeds immediately afterwards at Long's house. Long was convicted of theft of property and, having four prior felony convictions, was

sentenced to twenty years in the Department of Correction. The jury was deadlocked at 7 to 5 on the charge of aggravated robbery and a mistrial was declared. At the second trial on July 1, 1983 a verdict of guilty was returned, resulting in a sentence of forty years to run consecutively to the other sentence.

Long attempted to appeal his convictions unsuccessfully and in October, 1983 we granted a belated appeal to Long, issuing a writ of certiorari to send up the record. Long refused the appointment of counsel and chose to represent himself. The writ of certiorari was returned and the record lodged in this court on December 15, 1983. No further steps in the appeal were taken and eventually the state moved to dismiss the appeal, which we granted on July 9, 1984.

On June 17, 1986 Rickie D. Long filed a petition under Rule 37 alleging that (1) his sentences were void and should be vacated because the evidence presented at his trials was insufficient to corroborate the testimony of an accomplice, Charlie Ray Johnson; (2) the evidence was insufficient to support a conviction; (3) that he was denied the effective assistance of counsel by reason of his attorney's failure to (a) adequately prepare and present a defense, (b) interview state and defense alibi witnesses prior to trial, (c) move for a directed verdict of acquittal, and (d) file a notice of appeal; (4) that he was denied due process of law in that defense counsel was not properly prepared for and did not object to the sentencing of the defendant as an habitual offender. The trial court denied the petition and Long has appealed on the single issue that it was error to deny the petition without an evidentiary hearing. We find no merit in the argument.

Long invokes A.R.Cr.P. Rule 37.3 which provides that if the Rule 37 motion and the files and records conclusively show that the prisoner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files or records relied on to sustain the court's findings. Here, the trial court made no findings other than a finding that Long's petition was without merit and an evidentiary hearing was unnecessary. However, we have affirmed the denial of Rule 37 motions notwithstanding the trial court's failure to make written findings as required by Rule 37.3 where we have been able to determine from the record that the petition is without merit, *Rawls* v. *State*,

264 Ark. 954, 581 S.W.2d 311 (1979), or the allegations of the petition are such that it is conclusive on the face of the petition that no relief is warranted. *Smith* v. *State*, 290 Ark. 90, 717 S.W.2d 193 (1986). Here, from either point of view Long's petition for post-conviction relief is meritless.

The allegations of the petition are patently conclusory. We quote: the evidence was insufficient to corroborate the testimony of an accomplice, the evidence was insufficient to support a conviction; there was a denial of effective assistance of counsel by reason of a failure to adequately prepare and present a defense; a failure to interview witnesses prior to trial; a failure to move for a directed verdict of acquittal, failure to file notice of appeal; that defense counsel's failure to prepare or to object to Long's being sentenced as an habitual offender was a denial of due process.

If such general, nonfactual assertions were sufficient to require an evidentiary hearing under Rule 37, it is obvious that everyone committed to prison under a facially valid judgment would be entitled, following an unsuccessful appeal, to an evidentiary hearing before the trial court to review in every particular the trial, the evidence, all prior convictions, and every phase of defense counsel's preparation and trial strategy. Such was never the intent of Rule 37, which was designed to provide a recourse to those individuals who are wrongly incarcerated under a judgment so flawed as to be void. *Campbell* v. *State*, 288 Ark. 213, 703 S.W.2d 855 (1986). In this connection we have said repeatedly that motions for relief under Rule 37 which contain merely conclusory allegations do not warrant relief in the form of an evidentiary hearing. *Blackmon* v. *State*, 274 Ark. 202, 623 S.W.2d 184 (1981). In other words, if a movant under Rule 37 cannot allege grounds which show a factual basis for some entitlement to relief, he or she should not expect favorable action on the motion. *Urquhart* v. *State*, 275 Ark. 486, 631 S.W.2d 304 (1982).

The record itself demonstrates why this petition fails to allege explicit grounds for post-conviction relief. Long maintains there is "not a shred of evidence" connecting him to the crimes except the uncorroborated testimony of Charlie Ray Johnson. The assertion is palpably false. The record reveals that Rickie Long had been working at Chicken Country about six months. On

the Sunday evening of the robbery he got off work about six o'clock. Just before the ten o'clock closing time a gunman walked into the restaurant and ordered two employees and a single customer to the back where he obtained cash from the cash register and, when told that was all, he said "Quit stalling. I want the money from the file cabinet." He left with about $575 in a white cloth bag inside a brown paper sack. About sixty to seventy dollars was in rolled coins in packages bearing the signature of Bettie Neal.

One of the employees recognized the robber as Charlie Ray Johnson and by about midnight Johnson, who had no previous record, was in custody. On Monday Johnson confessed to the crimes and implicated Rickie Long. Long was arrested on Tuesday and he consented in writing to a search of his house. There the officers found a roll of dimes wrapped in a towel in the bathroom, a roll of pennies in a bedroom bureau drawer, several rolls of coins in a closet in the front room and the white cloth bag and paper sack in a trash can in the kitchen; all were well hidden.

Johnson testified that he and Long had known each other since childhood. He said Long came to his house that Sunday evening around seven o'clock and proposed the robbery of the Chicken Country where Long worked. Long, he said, described it as "easy money" and explained the layout. Long told him that besides the cash register there would be cash in the back of a file cabinet drawer in the office. When Johnson mentioned that one of the employees knew him, Long assured him she was not working that night. After the robbery Johnson went to Long's house, and the two men divided the money. While Long and his girlfriend were gone for cigarettes, Johnson left, leaving the rolled coins in a bag on the couch. After his arrest Johnson concluded that Long had deceived him in telling him the woman who knew him was not working and he decided to testify to the facts.

The state further proved through Mr. and Mrs. Neal that the rolled coins bearing Mrs. Neal's signatures had been delivered by them to Simmons Bank a few days before the robbery. They identified the coins taken from Long's house as the coins delivered by them to Simmons. A Simmons bank teller testified the rolls with the Neal signatures were delivered to the manager of Chicken Country prior to the robbery.

In addition to the discovery of the bank bag and rolled coins at Long's house, the state established that Long gave conflicting accounts of his actions following the robbery and concerning the presence of the robbery proceeds at his house. Long denied at trial meeting Johnson before the robbery, but he admitted telling the police he had seen Johnson about 7:00 p.m. and Johnson's sister testified that Long came to their house that evening around seven o'clock. Long first told the police he found the money in a sack under his couch, but testified he didn't know anything about it until the police search uncovered it. He told the police he had given his girlfriend two rolls of quarters but testified that he told them that merely to protect her. At trial he claimed he collected coins and that the rolls of dimes found in the bathroom and the pennies found in the bedroom belonged to him. In short, there is an abundance of corroborating evidence connecting Long with the crimes and more than enough substantial evidence to support the jury's verdicts.

With respect to the charge of ineffective assistance of counsel, the record compels the conclusion that Long received competent representation from court appointed counsel. Mr. Kearney was aggressive and evidently well prepared. He interposed numerous objections, a majority of which were sustained, and he succeeded in barring entirely one witness for the state in spite of a forceful attempt by the state to sustain the proffered witness. At the close of the first trial Long gave a lengthy statement professing his innocence no part of which impugned defense counsel's efforts.

Long's allegation that Mr. Kearney failed to interview alibi witnesses lacks substance. While two alibi witnesses, Tommy Tillman and Felix Bee, were subpoenaed by the defense, only Tillman took the stand. His testimony had no probative value as he could only state that he, Long and Felix Bee drove around for about twenty minutes around 9:00 or 9:30 on the evening of the robbery, challenging nothing the state had proved. Nor can we find anything to suggest that greater preparation would have strengthened the defense.

Long's allegation that his counsel was ineffective in failing to move for a directed verdict is obviously without merit. In the face of the evidence presented by the state such a motion

would have been futile. Moreover, we have held that the failure to challenge the sufficiency of the evidence by a motion for a directed verdict is not ineffective assistance. *Guy* v. *State*, 282 Ark. 424, 668 S.W.2d 952 (1984).

Nor is there any merit to the argument that Kearney's failure to file notice of appeal deprived Long of effective assistance of counsel at trial. While defense counsel has a duty to move to be relieved or to continue to represent the defendant on appeal, Kearney's failure to do either did not prejudice Long's right to an appeal because we granted Long a belated appeal. In that connection, as we have noted, Long refused appointed counsel and insisted on his right to appeal pro se. The eventual dismissal of the appeal was due solely to Long's failure to pursue his appeal.

The argument that Long was denied due process because Kearney did not object to Long's being sentenced as an habitual offender is not mentioned in appellant's brief and thus is wholly unsupported by any authority. Long's admission in trial that he had been convicted of four previous felonies renders any contention under this point plainly lacking in merit. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

The order appealed from is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. Once again this court has rendered an opinion clearly contrary to our Rules of Criminal Procedure. As stated in the majority opinion the appellant's Rule 37 petition was denied without a hearing and without written findings of fact. This is clearly contradictory to Rule 37.4(a) which reads as follows:

> If the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files or records that are relied upon to sustain the court's findings.

I cannot understand how this Rule could be confusing or subject to more than one interpretation.

A petitioner under Rule 37.1 is entitled to have a meaningful consideration of his petition. That is the reason Rule 37.4(a)

requires written findings of fact. If we are going to continue to serve as trier of fact, as we did in this case, and require the attorney general to investigate and prepare these cases, then we may as well have the petitions filed directly in this court.

When there is an appeal from a complete denial of a Rule 37 petition without findings of fact, the record must in some manner be supplemented in order for us to make an honest and fair decision. In the present case a trial transcript was available only because we had previously granted the appellant the right to appeal. But seldom will we have the trial record available. The logical and practical way to avoid such situations is to require the trial courts to follow Rule 37.4(a). Also, in fairness to petitioners and this court, we ought not to ignore the rules and engage in trial fact finding proceedings, and then sit in judgment as the appellate court in the same case.